IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ADVANCED SOLUTIONS NETWORK, INC.**                          **PLAINTIFF/
COUNTER-DEFENDANT**

v.                                          **CAUSE NO. 1:12CV250 LG-JMR**

**ERNIE GILL and JOHN DOES 1-10**                                  **DEFENDANT/
COUNTER CLAIMANT/
THIRD PARTY PLAINTIFF**

v.

**FOCUS GROUP, INC.**                               **THIRD PARTY DEFENDANT**

## ORDER GRANTING IN PART AND DENYING IN PART GILL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [31] for Partial Summary Judgment filed by defendant Ernie Gill.  Gill seeks a declaration that the two non-competition clauses at issue in this case are unenforceable, and that plaintiff Advanced Solutions Network, Inc. is not entitled to injunctive relief.  Additional time to conduct discovery was granted, and the issues have now been fully briefed.  After due consideration of the arguments of counsel, the record, and the relevant law, it is the Court's opinion that the non-competition covenant in the Employment Agreement is unambiguous, reasonable, and enforceable.  However, unlike the terms contained in the Employment Agreement, the non-competition covenant in the Purchase Agreement is ambiguous and therefore unenforceable under Mississippi law.  The Court grants Gill's motion for summary judgment as to the unenforceability of the non-competition covenant in the Purchase Agreement, but

denies the motion in all other respects.

PROCEDURAL HISTORY

Advanced Solutions Network, Inc. filed this lawsuit against Ernie Gill in the Circuit Court of Harrison County, Mississippi, claiming that Gill breached the Purchase Agreement and the Employment Agreement between them. (Compl., ECF No. 1-1). Advanced Solutions further alleges tortious interference with business relations, conversion, fraud in the inducement, fraud, and "malice." Advanced Solutions seeks injunctive relief and money damages.

After removing the case to this Court, Gill brought counterclaims against Advanced Solutions and third-party claims against Focus Group, Inc. (1st Am. Answer, ECF No. 25). As against Advanced Solutions, Gill alleges breach of contract, unjust enrichment, breach of covenant of good faith and fair dealing, and intentional invasion of privacy. Gill seeks a declaration that the non-compete provisions in the employment agreement are unenforceable, plus money damages. As against Focus Group, Gill alleges a claim of intentional invasion of privacy and unjust enrichment. Gill seeks money damages from Focus Group.

THE AGREEMENTS

<u>The Agreement for Purchase and Sale of Assets</u>

The Purchase Agreement at issue is between Advanced Solutions, REATA Advertising Corp., and Gill. (1st Am. Answer Ex. B 2, ECF No. 25-2). The parties agreed that REATA Advertising Corp. and Gill would sell "the assets relating to the

business" of their advertising agency, REATA, to Advanced Solutions. (*Id.*) REATA engaged in pure breed livestock marketing. Gill agreed to be employed by Advanced Solutions for a minimum of five years from the closing date. The parties agreed that this was an essential element of the Purchase Agreement, without which Advanced Solutions would not have entered into the agreement. (*Id.* at 3 (¶ 3.2)).

Gill also agreed that he would not compete with Advanced Solutions for at least five years. Prohibited competition was: "engag[ing], directly or indirectly, in the advertising business, other than as an Employee of Buyer," including having any financial or other interest in the advertising business. (*Id.* at 4 (¶ 3.5)). Gill agreed to repay his sign-on bonus if he breached the covenant not to compete. (*Id*).

The Employment Agreement

The Employment Agreement at issue is between Advanced Solutions and Gill. Advanced Solutions agreed to employ Gill to "render advertising and related services." (1st Am. Answer Ex. B 11 (¶ 1), ECF No. 25-2). The term of the agreement was for five years, with an automatic renewal for five years, or a lesser term as agreed by the parties. (*Id.* (¶ 2)). Gill's salary was $100,000 per year. (*Id.* at 12-13 (¶ 4)). He was also to be paid a signing bonus of $95,000, to be split into a $46,000 contribution to Gill's 401(k) plan no later than December 31, 2009, and a $49,000 contribution to Gill's 401(k) in January 2010. (*Id.* at 13).

Gill was subject to a restrictive covenant following termination of his

employment, requiring him to refrain from soliciting customers or other employees of Advanced Solutions for five years. (*Id.* at 16 (¶ 10)).

## DISCUSSION

Gill filed a motion for partial summary judgment seeing a declaratory judgment that the non-compete agreements are invalid under Mississippi law. Gill argues that the non-competition terms are invalid and unenforceable because they are 1) ambiguous as to what Gill is restricted from doing and 2) not geographically limited. Additionally, Gill argues that Advanced Solutions is not entitled to injunctive relief, because its injuries can be remedied by money damages.

**A. The Non-Competition Agreements**

Under Mississippi law, non-competition agreements are "restrictive contracts [which] are in restraint of trade and individual freedom and are not favorites of the law." *Kennedy v. Metro. Life Ins. Co.,* 759 So. 2d 362, 364 (Miss. 2000). Nevertheless, "they are valid unless unreasonable, and when reasonable, the courts will not hesitate to hold the parties to their contracts." *Frierson v. Sheppard Bldg. Supply Co.,* 154 So. 2d 151, 172 (Miss. 1963). The employer has the burden of proving reasonableness of a non-competition clause, and the clause must be strictly interpreted. *Cain v. Cain*, 967 So. 2d 654, 661 (Miss. Ct. App. 2007). The Court is to look to the respective rights of the employer, the employee, and the public. *Id.*

"The validity and the enforceability of a non-competition agreement are largely predicated upon the reasonableness and specificity of its terms, primarily,

the duration of the restriction and its geographic scope." *Kennedy*, 759 So. 2d at 364. Mississippi courts have held that an employer has an interest in the protection of its customer base, its goodwill, and its ability to succeed in a competitive marketplace. *Empiregas, Inc. of Kosciusko v. Bain,* 599 So.2d 971, 976 (Miss. 1992). The primary right of the employer is that of protecting the business from loss of customers by the activities of the former employees who have peculiar knowledge of and relationships with the employer's customers. *Bus. Commc'ns, Inc. v. Banks*, 91 So. 3d 1, 10 (Miss. Ct. App. 2011), *reh'g denied* (Aug. 23, 2011), *cert. granted*, 78 So. 3d 906 (Miss. 2012) and *aff'd*, 90 So. 3d 1221 (Miss. 2012) (citations and quotation marks omitted).

   *1. Ambiguity of the Non-Compete Agreements*

Questions of contract construction and ambiguity are questions of law, rather than questions of fact. *Epperson v. SouthBank,* 93 So.3d 10, 17 (Miss. 2012). In determining whether contractual language is ambiguous, the mere fact that the parties disagree about its meaning does not make the contract ambiguous as a matter of law. *Delta Pride Catfish, Inc., v. Home Ins. Co.,* 697 So.2d 400, 404 (Miss. 1997). Instead, "[c]ontractual provisions are ambiguous where they are susceptible of two or more reasonable interpretations, or where one provision is in direct conflict with another provision, or where terms are unclear or of doubtful meaning." *Reece v. State Farm Fire & Cas. Co.,* 684 F. Supp. 140, 143 (N.D. Miss.1987) (citing *Dennis v. Searle,* 457 So.2d 941, 945 (Miss. 1984)).

As articulated by the Mississippi Supreme Court, "[a]n 'ambiguous' word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Epperson,* 93 So.3d at 19 (citing *Dalton v. Cellular South, Inc.,* 20 So.3d 1227, 1232 (Miss.2009)). Courts will, of course, routinely give undefined words their "commonly accepted meaning." *Parkerson v. Smith,* 817 So.2d 529, 541 (Miss.2002).

The Mississippi Supreme Court examined a non-competition clause for ambiguity in *Kennedy v. Metropolitan Life Insurance Company.* 759 So.2d 362, 367 (Miss. 2000). The *Kennedy* defendant was a successful insurance salesman who had switched firms and issued new policies to a number of clients he had obtained while under the employ of his previous company. *Id.* at 364. The previous employer thereafter filed suit on the basis that his conduct violated a non-competition agreement entered into by the parties. *Id.*

The agreement stipulated that upon dissolution of the parties' relationship, the defendant "[would] not directly or indirectly perform any act or make any statement which would tend to divert from [plaintiff] any trade or business ... nor [would defendant] advise or induce any customer of [plaintiff] ... to reduce, replace, lapse, surrender or cancel any insurance obtained from or through [plaintiff]." *Id.* at 365. The proof presented indicated that although defendant had indeed accepted

the former customers and issued them new policies, he had not actively pursued them, and they had sought him out on their own volition. *Id.* at 367.

The court found the agreement ambiguous because it failed to expressly prohibit the defendant from accepting business with former clients, and left open whether he could sell new policies to those customers so long as he did not actively induce them or whether he could merely not advise them to switch coverage. *Id.* In finding that the clause should therefore be held inapplicable, the Mississippi Supreme Court noted that "the burden properly falls on the employer to draft a non-competition agreement which clearly delineates the scope of the employee's permissible business activities following the termination of employment." *Id.* at 367, 368. Because the defendant's actions would have been lawful under one reasonable interpretation of the agreement, but not the other, the court held that the employer was forced to bear the burden of the ambiguity. *Id.*

In *Cain v. Cain*, *supra*, the Mississippi Court of Appeals examined a non-competition clause that prohibited a nursing home from hiring the employees of its former contractor. *Cain*, 967 So. 2d at 658. The clause referred to "personnel employed by" the contractor. The court found this language to be ambiguous, because it was not clear from the contract as a whole whether the clause applied to all past, present and future employees of the contractor, or only those who were employed during the life of the nursing home contract. *Id.* at 663. It was therefore an unreasonable restraint on trade and unenforceable. *Id.*

The non-competition covenant in the Employment Agreement in this case provides:

> During the sixty (60) month period following termination for any reason and by either party, Employee shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any customers of EMPLOYER or its affiliates or successors. This provision shall apply to all customers of EMPLOYER during the term of Employee's employment, regardless of any prior relationship between the Employee and said customers.

(1st Am. Answer Ex. B. 16 (¶ 10), ECF No. 25-2).

Gill contends this covenant is ambiguous because it does not say exactly what he is prohibited from soliciting or inducing, and it does not make clear which Advanced Solutions customers he may not solicit.

In the Court's view, this non-competition covenant is not ambiguous under Mississippi precedent. It applies only to those persons or entities who were customers of Advanced Solutions during Gill's employment - a group that is easily identifiable. Further, in reading the whole of the Employment Agreement, it is clear that the prohibited solicitation is for advertising services such as those that Advanced Solutions employed Gill to provide to its customers. When viewed objectively by a reasonably intelligent person, the covenant prohibits any affirmative act of solicitation by Gill of Advanced Solutions' customers for five years. No other business activities are prohibited. This covenant does not forbid Gill from providing advertising services to any former Advanced Solutions customer. He is forbidden to solicit or induce their advertising business. Accordingly, there is no basis for setting aside the non-competition covenant in the

Employment Agreement on the grounds of ambiguity.

The covenant not to compete in the Purchase Agreement provides in relevant part:

> . . . the Seller, Ernie Gill, hereby covenants to the Buyer, that he will not, for a period of five (5) years from the date fixed for the closing, or a later date that might be fixed by his Employment Agreement with Buyer, or extensions thereof, engage, directly or indirectly, in the advertising business, other than as an Employee of Buyer, and that he will not, during such period of time, be connected or have any financial or other interest, directly or indirectly, with any person, firm, or corporation engaged in any such business, and that he will not act in any capacity for another person, firm, or corporation engaged in any such business, whether as an employee, agent, principal, consultant or otherwise, other than for Buyer. Seller acknowledges and agrees that he is being paid a sign-on bonus for going to work for the Buyer, and that should seller breach this Covenant Not to Compete, whether by failing to honor his five-year commitment as contained in his Employment Agreement, or by breaching this covenant by competing with Seller, directly or indirectly, then Employee shall be required to repay the sign-on bonus immediately.

(1st Am. Answer Ex. B 4 (¶3.5), ECF No. 25-2).

Gill contends this covenant is ambiguous because it does not define "advertising business" and therefore leaves open to interpretation which business activities are prohibited. He argues that the covenant could be interpreted to apply to advertising activities that Advanced Solutions did not engage in, such as producing radio commercials. Advanced Solutions argues that the covenant clearly prohibits Gill from engaging, directly or indirectly, in the advertising business so as to compete with Advanced Solutions for a period of five years. It contends that the restrictions placed on Gill are no broader or more restrictive than necessary to protect Advanced Solutions' interests.

The non-compete covenant above incorporates the terms of the Employment Agreement. Reading the two together, the parties agreed that the term of Gill's employment would be at least five years, and during that time Gill would engage in the "advertising business" only for the benefit of Advanced Solutions. The restriction also applies during any extension of the Employment Agreement beyond the initial five year term. In the event that Gill "fail[ed] to honor his five-year commitment" to Advanced Solutions, the restriction nevertheless continued until five years past the closing date.

Gill argues that the undefined term "advertising business" makes the covenant subject to multiple interpretations. The Court agrees that Mississippi law supports his assertion. For five years from the closing date, Gill was prohibited from engaging in the business of advertising, regardless of the form, unless it was on behalf of Advanced Solutions. Although Advanced Solutions argues that the covenant only prohibits him from competing with it, the covenant could be interpreted to prohibit Gill from engaging in any advertising-related activity. Advanced Solutions did not explicitly limit "the advertising business" to its own business of livestock advertising, and the commonly accepted meaning of the phrase encompasses much more than the business of livestock advertising. The non-competition covenant in the Purchase Agreement is ambiguous and broader than necessary to protect Advanced Solutions' interests. Accordingly, the covenant should not be enforced and Gill's motion for partial summary judgment granted to this extent.

*2. Geographic Limitation of the Non-Compete Agreements*

A non-competition agreement that is not limited as to duration or location is unreasonable and invalid. *Easy Reach, Inc. v. Hub City Brush, Inc.*, 935 So. 2d 1140, 1143 (Miss. Ct. App. 2006). In *Easy Reach*, the court found that a non-competition clause forbidding the plaintiff from manufacturing its product "everywhere for an infinite length of time" was unreasonable and unenforceable. *Id.* at 1144-45. The court also noted that Mississippi law scrutinizes non-competition clauses less strictly when they are related to the sale of a business rather than between employer and employee. *Id.* at 1145. However, such clauses must still be reasonable as to both time and geographic location. *Id.* (citing *Cooper v. Gidden*, 515 So. 2d 900, 905 (Miss. 1987)).

Gill argues that the lack of any geographic limit in either non-competition covenant renders them unreasonable and unenforceable. Advanced Solutions counters that the non-competition covenant in the Employment Agreement is limited in scope, as it applies only to the customers of Advanced Solutions while Gill was employed there. Inclusion in that set of persons or entities is the defining factor, regardless of the physical location of the customer. The Court agrees that the set of persons or entities subject to the restriction is readily definable, and given the nature of Advanced Solutions' business, physical location is immaterial in any event.[1] Mississippi has joined other states recognizing that advances in technology

---

[1] Gill testified that his advertising business, REATA, had clients nationwide when he sold it to Advanced Solutions. (Gill Dep. 169-70, ECF No. 91-1). Gill

have made geographic restrictions obsolete in some instances.  *Timber Lake Foods, Inc. v. Estes*, 72 So. 3d 521, 526 (Miss. Ct. App. 2011).  In the Court's view, the Employment Agreement non-competition covenant is reasonable and may be enforced.

The Court has already found that the non-competition covenant in the Purchase Agreement is unenforceable.  It is not necessary to analyze it for reasonableness based on geographic restriction.

### B.  The Request for Injunctive Relief

Gill argues that Advanced Solutions cannot show it is entitled to injunctive relief because it cannot show irreparable injury where the purchase and employment agreements specify a remedy at law, and where Advanced Solutions seeks monetary damages for tortious interference with business relations.  Further, Gill argues that Advanced Solutions continues to use his name in its advertisements and on its website, which demonstrates that it has not been harmed by association with him.  Advanced Solutions notes that although it requested injunctive relief in this matter, it has not chosen to raise the issue before the Court by motion.

The Court declines to rule on the availability of any potential remedy,

---

testified that he traveled to the ranching operations to take pictures and video, which he then distributed from his office.  The Court notes that Gill states in his rebuttal that he also testified in his deposition that REATA had customers in only 12 states, but does not point to the relevant testimony, and the Court is unable to locate it in the materials provided in connection with this motion.  (*See* Rebuttal Mem. 10, ECF No. 99).

including injunctive relief at this time, as doing so may constitute an advisory opinion. Whether any party is entitled to a remedy has not yet been established. Gill's request for summary judgment as to injunctive relief will be denied.

CONCLUSION

For the reasons stated above, Gill's Motion for Partial Summary Judgment will be granted in regard to the Purchase Agreement. Advanced Solutions may not enforce the non-compete covenant in the Purchase Agreement. The Motion will be denied in all other respects.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [31] for Partial Summary Judgment filed by defendant Ernie Gill is **GRANTED** as to the Purchase Agreement non-compete covenant and **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 18th day of September, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE